Appellant, Mr. English for the appellant, Ms. Carroll for the appellate. Morning, counsel. Mr. English, please proceed when you're ready. Thank you, your honor. Well, good morning. I said my name is Greg English. I was appointed by this court to represent Mr. Brown. I also represented him at trial. I'd like to initially turn my attention to count one, the possession of a felon assuming possession of a firearm by convicted felon and violation of 18 U.S. Code section 922 G. The prosecution claims at page 29 of its brief that the defendant waived objection to the knowledge of status issue. I note, as we said in our brief, that the Supreme Court and United States v. Of which we cited in our brief at page 28. Rehab ruling occurred less than three months before the trial. In this case, it added an element. The prosecution must prove that the defendant knew not only that he was convicted felon, but that he had the relevant prohibited status. This was a relatively obscure issue. It was not one that was on the front page of the Washington Post. It affected a relatively narrow class of people. And the simple truth is I was unaware of the change in the law. I was a solo practitioner. I read the journals and things that come out, but there's a lag time before the news of this case was disseminated. The prosecution was also completely unaware of this change. They were obligated, if they knew about it, to inform the court. They did not. In fact, as is normally the practice in the district court, the prosecutors drafted the instructions. If I had any objection to them, I do not remember. I don't believe I had a good faith basis to object to anything. I note that two extremely capable prosecutors with the government's resources. When I worked at Justice, there was an appellate section that would disseminate news of new cases that were important to the various sections. And there's certainly an appellate section in the U.S. attorney's office in this case. So neither of the parties were aware of the change. And an excellent judge was also unaware. And so I respectfully submit in the interest of fairness, the court should consider this case on its merits and also in the interest of judicial economy, because if the court rules that I should have been omniscient and should have known of this case immediately, which upset standing precedent, that my client will immediately file a 2255. And the matter will come right back before a court to be litigated again. And here it's been briefed. It's being argued. I respectfully submit it should be resolved on its merits. Now, the prosecution also claims that didn't didn't the stipulation include the knowledge element? It included the knowledge that he had been convicted of a felony, not that he was aware that his status of a convicted felon prohibited him from possessing a firearm. Right. There's a difference. No, but there's there's an intermediate one that you're skipping, it seems to me, which is he's he had been convicted of a felony. The question that Rahay phrases is whether he knew he'd been convicted of a crime punishable by more than one year, not whether he knew that being convicted of a crime punishable by more than one year means that he can't possess a firearm. That's a third one. Rahay, as I understand it, was the second one, which is whether he knew he'd been convicted of a crime punishable by more than one year. And the stipulation that Joint Appendix 307 says exactly that. Your Honor, clearly, he knew he was convicted of a felony. But if I can refer to the medley case for the Fourth Circuit, which I cite in the 28 J letter at page 31, it says we hold that the failure of the indictment to provide proper notice, combined with the district court's failure to instruct the jury that it had to find Medley knew his prohibited status under the reasonable doubt standard and the government's failure to present sufficient evidence on that point simply require reversal. No, but knew his prohibited status means knew he'd been convicted of a crime punishable by more than one year of imprisonment. Not that he knew that that status meant he couldn't possess a firearm. Your Honor, our position is the prosecution was required to prove just that, that he knew that he wasn't a prohibited person. Your Honor, I like to know that. Hey, on page on the Supreme Court reported page 2194 Supreme Court defines up right up front what they mean by prohibited status or what they call relevant status. And they say that he fell within the relevant status parentheses, that he was a felon. That's all he didn't have to know that he was barred from having a firearm. The Supreme Court has defined the relevant status as that he was a felon. And in this case, it was stipulated that he knew he was a felon. We can see that there's no question relevant status under a height. Your Honor, my position on behalf of my client is that the government had to prove a little more that he knew that support that supports it because I see multiple times them defining the relevant status is simply being a felon or in that case, someone who's in lawfully in the United States. Can you point to me what you're relying on and right here. Your Honor, what I'm relying on is the portion of medley, which interpreted. Just said prohibited status what you just read to us which is no different from what I just said, and that is, you have to have the prohibited status which is being a felon. I'm following the Supreme Court decision here. I'm not bound by the Fourth Circuit. And I understand that, Your Honor. I agree with that. We take a somewhat broader view. But, you know, so it wasn't medley vacated isn't medley wasn't vacated because it's on bank. I general the last that I looked three weeks ago. Your Honor, I was not aware since then of any change since then. I have not done anything on the case for the last I had throat surgery last Monday and was medicated so I did all the preparation before that. But I would like to say, Your Honor, it's entirely possible for a person to not know that being convicted of a felony divest them of the right to possess a firearm with it was an election just having occurred. We saw that many felons have had their right to vote restored. And that could cause some confusion. And after this Supreme Court case decision in Heller, a case that started in this circuit, we as lawyers know that it essentially vacated the District of Columbia's procedures for obtaining a firearm license. A person like my client who one of the government exhibits a trial was a GED certificate on his wall and the firearm where the gun was found. He is not a highly educated person. And with the confusion about the state of the firearms law, he could readily believe it's only possible for him to believe that he was no longer prohibited. And my position is simply that the prosecution never proved that he did know that. And so for that reason, Mr. Your Honor, I thought I would. First of all, I would say the medley case that I rely on here now was not decided within the time frame for a reply brief in this case, Your Honor. And so that's essentially why I did not for this, but I brief because a case that didn't exist at the time reply brief was due. Yes, Your Honor, a medley was cited later. Well, how did you know something was going to come up that you could use later? Your Honor, I. The case laws that develop seem to be more favorable. As the time went on, I didn't know that this case would be decided. I was aware of the Gary case. But, Your Honor, I raised it when I became aware of it. And see, my time is about out. If it pleases the court, I will submit on the pleadings on the 404 B issue. OK, thank you. We'll hear from the government now. Unless my colleagues had questions. Miss Carol. Thank you, Your Honors. May it please the court and care of the United States. As we argued in our brief, there was an appellant took a contrary position to the admissibility. Excuse me. At trial, appellant conceded not only the fact of the prior felony, but that he knew that because of the prior felony, he was a felon and could not possess a weapon. That was in the course of the pretrial hearing on September. I believe it was 10th of 2019. I cite that specific colloquy in my brief. In addition, Your Honor. But I don't I don't think he he didn't concede that he knew he couldn't possess a weapon. Right. I believe I don't think he had to. Did he? Did he concede that? I believe that was the language. And if I could refer to that because I did have it with me. I thought I was a J.A. three or seven, but maybe I J.A. 60 was the pretrial hearing. Pretrial here. I'm sorry. I thought you were talking about the stipulation. No, the stipulation, of course, doesn't mention that his knowledge of the fact of the illegality. But appellant at the hearing stated one of the stipulations we've entered into today and signed that my client was convicted of a felony. And because of that, he knew was he was legally impaired and could not have a gun in D.C. So in addition to that concession, Your Honor, there has been no case that the government is aware of that has held that appellant must know. Essentially, ignorance of the law is an excuse in the context of 922 G cases. In fact, as Your Honor's noted, Rahaf only required the additional element of the knowledge of the fact of the felony conviction, which appellant has never has never disputed and was part of the indictment stipulation and instruction to the jury. So there is no error either by counsel or by or in the record because the jury found the requisite element required by Rahaf. So I'm sorry. Certainly, Your Honor. No, please. If you were going to make some more on that point, go ahead, because I was going to notwithstanding his submission, I had some questions. I was actually going to ask if there were any further questions on rape. I would turn to the other issue. Would Your Honor ask want to ask that question? I have more questions about rape. I didn't mean to cut that off. OK, so are you familiar with our case in the United States versus Sheffield? Yes, Your Honor. We did cite it and touched on it very briefly in our brief. Why isn't let's start with the ammunition conviction, which was 11 years old. Yes. I wasn't that stale. So balancing first, Your Honor. Appellant never challenged the admissibility based on staleness of either conviction. The only argument in the motion limine that appellant made in the pretrial pretrial was that the 2008 misdemeanor conviction was not admissible under 609 for impeachment purposes. Appellant did not. Appellant's analysis was strictly based on the fact that. But he talks at the 609, he talks about the time the time limit there and then says the same sort of prejudice analysis should apply here. So I think that imports the staleness principle here. We can argue about whether you should import from 609 or not. But that that is that was his way of saying this is unduly prejudicial for those same considerations there, which included staleness. Well, to the extent that they're they're an issue of staleness was raised at all. The even 609 does not have a bright line requirement of an absolute bar of evidence before 10 years. And certainly in under 403 there or and 404, there is no requirement that the prior bad act be within your 11 year old conviction. And it was ammunition, not for a gun and ammunition for a different type of gun. Now tell me what on earth an 11 year old conviction for ammunition for a different gun made more or less likely in proof of an element. How did it make anything more likely other than this guy's been around guns before? Well, Your Honor, the the the relevance was the fact that the 2008 possession of ammunition was in the same bedroom in the same house where the search warrant was executed in this case. And as Your Honor is aware, evidence becomes still at different rates depending upon the purpose. This is ammunition. It's not even a gun. And it was even it wasn't even ammunition for the same type of gun. So I don't see how it made any particularly even looking at a Linares type analysis, given all of your other proof. I don't see if the jury thought the gun was planted, then it's not going to help you. And if the jury agrees that the gun that was in the drawer was not planted, that it was his, the ammunition is not going to do anything. It's just piling on propensity to have guns. I would respectfully disagree, Your Honor. In this case, because the issue was both constructive for two reasons. One, because the issue was constructive possession of evidence that was contained in the same bedroom. The probative value in this court has recognized that that the relevance of the prior bad act depends on the reason for which it's offered. And part of the reason was the fact that the defendant kept contraband, had secreted contraband in the same exact room where the evidence was recovered in this case. Under the circumstances of this case, the probative value didn't diminish with the age. The fact that the defendant had previously secreted evidence in the same location is highly probative that the defendant's ties to the evidence that was secreted in that location during the search warrant in this case. In the defendant's dispute, it was his room. So it made perfect sense that his ammunition from last time would have been in the room. So either they're going to believe that the gun was his because it was in his room, and you had plenty of evidence on a lot of evidence on that front, or they're not. I just don't see what the ammunition, particularly something that stale and it's not even like you found another gun, it's sort of off point. It's very, very old. It seems to me to fall squarely within Sheffield on prejudice and it did nothing other than show like you said he has unlawful things in his room, but that sounds like propensity to me. An ammunition may not be a gun, but it goes with a gun, and there was ammunition seized in this case, and the fact that the defendant kept contraband in his bedroom was a disputed issue. Appellant challenged the constructive possession of the gun as well as the other paraphernalia. This court's analysis and other cases such as McGill and other cases cited in our brief where prior possession was relevant to show an intention to exercise dominion and control. Not that old that's the that's the thing you got to grapple with here is this is really old under Sheffield, I understand your honor the age of the case but when the point is the intention to exercise dominion and control over contraband secreted in the same location that information that fact factor doesn't diminish with age, the fact that he kept it was 20 years old your position would be the same, there's no time limit, there's no staleness on that question of residence your honor justice in a search warrant. Does that mean 20 years wouldn't matter. Are you arguing for no rule of staleness when you're talking about intent to conceal unlawful items. Well, as your honor under recognizes everything is a fact that this is a fact specific analysis and john I'm talking about your argument to me right now I don't see you weigh in the staleness fact at all so I'm trying to understand from you how you weigh I haven't heard you weighing it in there yet how you would weigh it in there, or are you arguing to us which sounded to me like your argument and maybe that's your argument that there's no staleness there's no time limit in this actual scenario, the purpose for which it's offered in this case it was not stale because that the purposes that ties to that room, and the ties of keeping in that room, when would it residents can go on for decades and and that is unique to this case that distinguishes it from Sheffield. I'd also note in Sheffield, it was the lack of further information about the context, which this court actually pointed as part of the reason why under the circumstances of Sheffield. It was not probative in the 403 balancing, it did not outweigh the, the prejudice of the prior conviction. In this case, it was highly probative particularly given the defense the fact the fact that appellant challenged what the ammunition from 11 years ago was highly probative that he possessed the gun that appellant intended to exercise dominion and control over contraband that was secreted in his in his room, you're talking about the gun or everything in the room. I would talk about everything in the room but but particularly the gun because it was secreted, it was in a drawer it was not out in the open, as the drugs were but it was in a drawer. Now, as your honor noted there was overwhelming evidence that went to the pounds possession but in this case, as, as the court found in Sheffield and in subsequent cases and analyzing it. That factor actually weighs towards the harmless error. In this case, and that's a different argument from whether or not 11 year old convictions for something that's not even directly connected. I get your position on 403 but right so you definitely have your harmless error analysis which was really really cursory in your brief I was a little surprised. Well, it was overwhelming evidence, there was a, I mean, that's that's I was a little uncomfortable because a lot of times we have circuit precedent that things that are sort of just thrown out there and not developed we don't recognize this arguments. I thought from reading the background that you would have a more substantial harmless error argument, simply than just announced, saying that there's, and our argument was tailored to the arguments raised in appellants brief and appellants brief on this point was rather brief it did not it talked about 609 it did not talk about Sheffield appellant did not cite Sheffield did not raise this issue, either in front of Joe Jogan Joe Jogan did not analyze this particular issue, but found based on viewing the facts that were at issue that it was highly prohibitive of the defense. Now, so do you want to just give me a minute on your harmless error on arguments so I can thank you. Thank you. Yes, as your honor recognize this was overwhelming if there was overwhelming evidence in this case there was a fingerprint found on, I believe it was the slide as well as the magazine in this case that was identified as as appellants. The. There was evidence from both his prior conviction for quit cocaine that tied him to the drugs that was that was located in all the paraphernalia that was located in the room, and the testimony from the expert witness which tied, all of those items to drug trafficking, and the, the jury in this case certainly didn't misuse the evidence but given it's it's acquittal on count for. Finally, Judge Hogan gave limiting instructions both at the time, the stipulations were admitted, which, again, were very minor and brief were admitted through stipulation were large portions of the of the case they were brief references, both at the time they were admitted, and two paragraphs in the government's closing. One day or a multi day trial I just don't quite clear on that. I believe that the actual trial may have spent about three to four days but the actual testimony took about, I believe, two days and the jury returned a verdict. After being retiring on the afternoon returning the following mid morning. Thank you. If there are no other questions, we'd submit on our brief and ask that Judge Hogan's ruling be affirmed. Thank you, Miss Carol. Mr English will give you two minutes for your rebuttal.  I respectfully submit this was a closely contested case as evidenced by my clients acquittal on the 924 c gun count. Your Honor, and regarding the admission of the of the misdemeanor ammunition possession case, we respectfully submit that was outrageous. My client's fingerprint was clearly found on the gun. And in this case. So it's difficult to see how it added anything of any probative value that what it was essentially was a character assassination attempt to show propensity evidence, which is is prohibited, Your Honor, and for that reason, which it should not have been done. And it's it's hard to say that it's a harmless error because of who knows what effects three and we, and our initial emotional and lemonade cited the studies that show when juries are aware of a prior record of someone they're much, much more likely to find them guilty. For reasons and so we respectfully submit that that evidence never should have been admitted in this case. And so, in closing, let me say thank you for giving me the opportunity to argue on behalf of my client in this case, I appreciate your attention. Thank you counsel, thank you to both counsel will take this case under submission. Mr English, you were appointed by the court to represent appellant in this matter, and the court wishes to recognize your representation of appellant. Thank you, Your Honor.
judges: Srinivasan, Henderson, Millett